MERRITT, Circuit Judge,
dissenting.
My colleagues have overlooked and make no reference to or analysis of Section 3 of the easement agreement between the parties. (See Appendix attached.) This section allows the owner to engage in all normal rights of a landowner except those “expressly prohibited.” The agreement does not expressly prohibit filling the sinkhole at issue.
The sinkhole at issue was next to the defendant’s home at his farm. It was an unsightly hole in the ground, a few feet deep, according to the pictures in the record, with half dead trees and brush growing out of it. Due to the irregular terrain, it could not be mowed, farmed, landscaped or used for a garden or anything else. It is an eyesore.
In paragraph 3.0 of the environmental agreement entitled “Grantor’s Reserved Rights,” the landowner (referred to as the “Grantor”) — quote—“reserves for Grantor, Grantor’s Heirs, Successors and Assigns, all rights as owners of the Protected Property to use the Protected Property for all purposes that are not expressly prohibited herein.” (Emphasis added.) The easement agreement between the Nature Conservancy and the landowner then says: “Without limiting the generality of the foregoing, the following rights are expressly reserved” to the landowner. Those “reserved” rights are then listed in eight paragraphs which include (1) “commercial agricultural purposes,” which are broadly defined; (2) in the large area around the house, the installation of “fences, driveways, paths,” new “landscaping,” and other new features like “flower or vegetable gardens for personal enjoyment;” and (3) “dig wells or create ponds.” The final paragraph in the list then states that the landowner shall not be obligated “to maintain [the] Protected Property in the condition *681 in which it exists on the date of the Conservation Easement.”
The only provision my colleagues can point to restricting the filling of the sinkhole adjacent to the home does not mention anything about sinkholes and contains a broadly expressed exception allowing “filling” or “change in the topography ... in conjunction with activities otherwise specifically authorized herein,” an obvious reference to the long list of activities on the land in Section 8 reserved to the landowner. The full paragraph that my colleagues rely on states:
2.5 Topography. There shall be no ditching; draining; diking; filling; excavating; removal of topsoil, sand, gravel, rock, or other materials; or any change in the topography of the land in any manner except in conjunction with activities otherwise specifically authorized herein.
(Emphasis added.) Literally speaking, the paragraph on its face when parsed allows “filling ... in conjunction with activities otherwise specifically authorized herein,” e.g., “digging a pond” or “landscaping,” or farming, etc.
My main point simply is that there is nothing in the agreement that forbids filling the sinkhole. What is clear, if anything, is the language of paragraph 3 that states that the landowner retains “all rights” that are not “expressly prohibited herein” and the language of paragraph 3.8 that the landowner does not have to “maintain the property” just as it was at the time of the contract.
Beyond that, the record here does not reflect that the sinkhole-filling is harming or affecting anyone except the owners. The fill from the pond is used for improving and beautifying the property. I would, therefore, reverse the district court’s decision that orders the landowner to now remove all of the fill in the sinkhole and then to pay to the Nature Conservancy a $100,000 judgment. The environmental agreement itself preserves the landowner’s liberty to use his property “for all purposes that are not expressly prohibited,” including filling this sinkhole, which is not expressly prohibited. I would preserve this valuable choice or liberty handed down from the common law rather than preserving the sinkhole. No one in this case has attempted to show or describe what possible value the sinkhole has for purposes of historic and environmental preservation.
Attached to this opinion as an Appendix is the portion of the contract between the parties that contains the operative provisions to be interpreted in this case.
*682 Appendix
Case; 5:07-cv-00112-JMH-JBT Dqc#;2-7, Filed; 04/20/07 Page; 9 of 21- Page fDft 105
f\IX
l. .^~iC[ST_QSB. It Is the uuffiosa.oftfiis Basement to assure that the Protected Property^iil be retained tbreve- snbstai^lly undisturbedln its natural condition and to prevent my «se of the Protected Property that wíi 1 significantly impair or hiterfere with the Conservation Values of the Protected Property. Grantor intends that this Basement will confine the use of the Protected Property to activities that are consistent with the purpose of this Basement,
2. PROHIBITED USES/RBSTMCTIONS, Any activity on or use of the Protected Property inconsistent with the purpose of this Basement is prohibited. Without limiting Ute generality of the foregoing^WI^Swlií^^cíbSsaBúmsmre expressly prohibited except as provided is paragraph apclffw;
2-L Comroorcini Activity. There shall he no industrial, commercial, or commercial recreational activity undertaken or allowed on the Protected Property. Mo right of passage shall be granted or retained across or upon the Protected Property if that
-9.'
*683 case; 5;07-cv*00112-aMH-JBT Doc #; 2-7 Pite* 04SO/Q7 Page; 10 of 21 - Page !Dfc ' ' 106
right of passage is used in conjunction with suchprobibited activities. (See paragraph 3,2 below.)
2.2, Structures. The** shall heno construction or placing of any bouse, garage, bam or other building, tenuis or otter recreational court, landing atrip, mobile borne, swimming pool, fence or sign (other thantbose permitted, required ©fallowed by the Conservancy for apprapriatwraauageitumi, prevention; of tenting or trespass, etc.), asphalt, concrete pavement) billboard or. other advertising display, antenna, utility pole, microwave tower, radto/telcvision tower, other transmission towers, conduit) line, sodium, vapor light or any otter temporary orpermanenl structure or facility on 'the Protested > Property. (See paragraph 3.3 below.)
13, Subdivision, The Protected Proper^ .way not be divided, partitioned, subdivided or conveyed except as required for separate ownership of no more than two (2) residential or agricultural paraste The minimum sis» of any subdivided parcel shad be My (50) acre. ,
24, Minina. There shall bo no mining, drilling, exploringfwor removal of minerals floro the Xhoteeted property.
2.5. - Topography. There shall be no ditching; draining; diking; filling; excavating; removal of topsoil, sand, gravel, reck, or otbermatetíBtsí or any change lit the topography of she laud toany manner except fa conjunction with activities chxCrwise speoi^^authoHSSgllerem. ' ............1............. ,-"*''-
2.6, Water, There shall be no manipulation or alteration of creeks, streams, surface or subsurface springs or otter bodies of water or the shorelines thereof or any activities on or uses oftíie. Protected Property detrimental to water purify or qualify,
2.7.Dumning/Haaardous Wastes. There shall bo no dumping oftash, noncomposiable garbage, hazardous or toxic substance or otter unsightly or offensive material,
2.8. Roads. There shall be no building of new roads or oilier rights of way except for paths and foot trails consistent with the preservation of the Protected Property. Existing roads may be maintained but shall nbt be widened or improved,
2.9. Peedlc.is, There shall be no feedlols permitted on the Protected Property,
2.10. Removalof Vegetation. There shall bono removal, destwotion, cutting, trimming or mowing of any trees or other vegetation, living m;dead'cxcept(a) to remove hazardous frees far reasons of safety; (b) tgMngtamt and/or protect existing or authorized roods, fences, foot traits .and paths or area^ímcStütHvlwlárairío eBhorízéd stiucSEcsT
-10-
*684 Case: 5:O?-cv-0QUZ-JMH-JBT Doc#: 2-7 Filed: 04120/0? Page: 11 of 21 - Page ID#; ' 1 10?
(c) to use downed and dead timber for personal «se as firewood, or (d) to remove Invasive, non-native vegetation.
2.1L NonN.atiVe Species. No invasive non-native plant or animal species sha!I be introduced to the Protected Property by Grantor without the prior written consent of the Conservancy- The Conservancy may withhold such consent if it determines, in its sole discretion, that a non-native species which Grantor wishes to introduce is invasive nnd/or would have adverse effects on other tracts of land in the-Kentucfey River Palisades. Among the animal species that shall not be introduced ate: pheasants, wild boar and deer species from Europe or Asia, Among the plant species that shall not be introduced are: bush honeysuckles (Lonicera spp.), privets (Ligustmm spp.), winter creeper (Buonymus fortunei), bunting bush (Buonymus alatus),Tree-of-Hcaven (Ailaotbus altisshm), white mulberry (Morns alba), muitiflera rose (Rosarauittflora), autumn olives (Blaeagnus spp.), kudzu (Fuerana lobata), Japanese spiraea (Spiraea japónica), English ivy (Hederá helix), periwinkle (Vinca minor), and Asian running bamboos (Phyllostaehys spp., Sasa spp,).
2.12, gnraytna. There shall be no use of pesticides or biocides, including but not limited to insecticides, ftmgieides, rodenticides and herbicides except as ratty be necessary to eliminate non-native species and with the prior written approval of the Conservancy and except, in the Residential/Agricultural Area, for the use of agricultural chemicals that may boused according to accepted agricultural practices in compliance with all applicable laws and regulations.
3. GRANTOR'S RESERVED RIGHTS, The Grantor reserves for Grantor, Grantor’s heirs, successors and assigns, ail rights as cWHets oí me Protected Property to ttse the Protected Property for all purp.ps.es, |ha( arcqqfr expressly prohibited herein and 'Kn^to^H3^^to^H^^^^itoitoutMmifingitogencniEyof!jtEe1o^mng, thefóílowing rights are exjncssíy reserved:
3.1. Conveyance. Grantor may sell, give, mortgage, lease or otherwise convey the Protected Property, providedtbat such conveyance is subject to this Easement and written notice is provided to the Conservancy in accordance with paragraph 6.5 below.
3.2. Agricultural Uses, Notwithstanding the foregoing provisions of paragraph 2, the Residential/Agricultural Area of the Protected Property (as shown on Exhibit B) may be used forcpiaaiSffiM.Agmultural purposes including growing crops, raising and 1 aria passage mM.feJilo.-wed across or upon the Protected Property in conjunction wiST ífBspénñWedactívity. ----- « — . —~
-II-
*685 Case: S;0?-cv-00112-JMH-3BT Doe#: 2»? Filed: 04/20/0? Page: 12 of 21* Page ID#; ' • 108
The Henslow Sparrow Area of the Protected Property {as shown on ExhibitB) may be used for grazing livestock and forcutting and baling and removing hay upon the Mowing conditions:
a. If Grantor elects to use such properly for grazing, Grantor shall establish and maintain a prescribed grazing plan acceptable to the Garrard County District Conservationist or such other prescribed grazing plan that is approved in writing by the Conservancy for the Henslow Sparrow Area and shall follow such plan in grazing livestock in the Henslow Sparrow Area,
b, No hay shall be cut In theHenstow Sparrow Area from April 1through My 15ft of each year.
3.3. Personal Resldence.dn the Rcridential/Agrieultural Area shomotT) ExhibitB, Grantor may construct tvwTpetS outbuildings {such as garages or tool sheds) and raav install, fences, driveways, natía. septic systems, utilities., underground pipes and wires, or overhead wires necessary for the uaemnd permitted buildings. No buildings, other structures or related improvements may be Ibeated in the Henslow'Sparrow Area showh on ExhibitB, To the exisNsonrislentwiih die purposes of this Easement, Grantor may perform: routine malptenani^andscanBg^ and upkeep of the area immediately aromfai^:'y^^pba|d^ orv^!TOítr^ídens*forp^M!^bjoyffleiSRfcoñi33S!!^^nl®ílSc '
3A. Signs. Grantormayplaceinteipretivesiinsandl,nohu«tingt,,*sno trespassing” or similar signs on the Protected Property.
3.5, Native Species. Grantor may undertake to restore and enhance the native plant and animal communities on the Protected Property under an ecological management plan which has received the prior written approval of the Conservancy.
3*6. Fences. Grantor may, but shalinot be obligated by repair, replace, 'maintain, improve or remove any ¡fence located on the Protected Property as of ie date of this Easement. The Grantor may, but is not obligated to, construct, repair, replace, maintain, improve or remove additional fencing as toe Grantor deems.necessary to secure theProtected Properly, ,
3.7. Wells and Ponds. Grantor may doig wells and creatye ponds on the Protected Property.
3.8- Preservation, Grantor may, but shall not be obligated to, undertake any activity reasonably necessary to maintain the Protected Property i» lb® condition in which it exists on the date'of this Conservation Easement